**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FRANKIE ADAMS,               )      NO. CV 06-00485-MAN
                              )
           Plaintiff,    )
                              )      MEMORANDUM OPINION
         v.              )
                              )      AND ORDER
MICHAEL J. ASTRUE,[1]       )
Commissioner of the        )
Social Security Administration,  )
                              )
          Defendant.    )
_____ )

     Plaintiff filed a Complaint on January 30, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claims for supplemental security income payments ("SSI"). On February 7, 2006, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on October 6, 2006, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and directing the payment of benefits or,

_____

     [1]     Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action. (*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).)

alternatively, remanding the case for further proceedings; and Defendant requests that the Commissioner's decision be affirmed.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for SSI on July 28, 2000. (Administrative Record ("A.R.") 48-50.)  Plaintiff claims to have been disabled since December 15, 1989, due to diabetes mellitus, hepatitis C, hypertension, and heart disease.  (A.R. 13, 48.)  He has past relevant work experience as a truck driver.  (A.R. 13.)

On January 10, 2001, the Commissioner denied Plaintiff's application.  (A.R. 29-33.)  Plaintiff filed a request for hearing before an administrative law judge.  (A.R. 34.)  On August 23, 2001, Administrative Law Judge Robert Evans ("ALJ") dismissed the request for hearing as untimely.  (A.R. 12, 26-27.)  Plaintiff sought review by the Appeals Council.  On February 20, 2004, the Appeals Council remanded the case, finding it was reasonable to conclude that Plaintiff had timely filed his request for hearing, and directing the ALJ to issue a new decision concerning Plaintiff's alleged disability prior to February 23, 2003, the date on which Plaintiff had been adjudged disabled pursuant to a separate SSI application.[2]  (A.R. 12, 41-42.)

_____

[2]   Plaintiff filed a new application for SSI on February 24, 2003, and was found disabled as of February 23, 2003.  (A.R. 12, 28, 41.)

2

On December 7, 2004, Plaintiff, who was represented by counsel, testified at a hearing before the ALJ. (A.R. 414-40.) On January 4, 2005, the ALJ denied Plaintiff's SSI claim, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 12-18, 5-8.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his January 4, 2005 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from June 7, 2000 (the protective filing date), to February 23, 2003. (A.R. 13, 17.) The ALJ found that Plaintiff's impairments -- diabetes mellitus, claudication of the legs (*i.e.,* pain or a tired or weak feeling occurring in the legs), hypertension, history of hepatitis C, and depressive disorder, not otherwise specified -- were "severe," but that he did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (A.R. 17.) In addition, the ALJ found that Plaintiff's testimony regarding the degree of his impairments and limitations was not totally credible. (*Id.*) The ALJ further found that Plaintiff was an "individual closely approaching advanced age" pursuant to 20 C.F.R. § 416.963 during the relevant time period and had a "limited education" pursuant to 20 C.F.R. § 416.964. (*Id.*)

In describing Plaintiff's residual functional capacity for the period from June 7, 2000, to February 23, 2003, the ALJ stated:

[Plaintiff can] lift and carry 20 pounds occasionally and

3

10 pounds frequently with standing and walking 2 hours total in an 8-hour workday, and perform simple work-related tasks in a work setting where time pressure is reduced, with mild limitations interacting with supervisors, peers, and the public as well as maintaining concentration and attention and completing simple tasks, mild-to-moderate limitations completing complex tasks and completing a normal workweek without interruption, and moderate limitations handling normal stresses at work.

(A.R. 17.)  In addition, the ALJ found that Plaintiff was unable to perform his past relevant work during this time period, and that transferability of skills pursuant to 20 C.F.R. § 416.968 was not an issue in this case.  (*Id.*)  Relying upon the testimony of a vocational expert and using Medical-Vocational Rule 202.12 or Rule 202.11 as a framework, the ALJ found further that Plaintiff could have performed a significant number of jobs in the national economy during this time period, such as the jobs of a storage clerk and office helper.[3]  (A.R. 16-18.)

Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.  (A.R. 18.)

---

[3]     Under Rule 202.11, a person who is "closely approaching advanced age," has a "limited or less" education, and is skilled but with skills that are not transferable, is not disabled.  Under Rule 202.12, a person who is "closely approaching advanced age," with a "limited or less" education, and has transferable skills, is not disabled.  20 C.F.R. Pt. 220, App. 2.

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1041; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

5

**DISCUSSION**

Plaintiff alleges four issues.  <u>First</u>, Plaintiff contends that the ALJ erred in determining the onset date of his disability.  <u>Second</u>, he contends that the ALJ's finding that Plaintiff could have performed an alternate occupation is not supported.  <u>Third</u>, he contends that the ALJ did not evaluate the opinion of a state agency physician properly.  <u>Fourth</u>, he contends that the ALJ's hypothetical question to the vocational expert was not complete.  (Joint Stip. at 3.)

**A.    The ALJ's Finding That Plaintiff Was Not Disabled Prior To February 23, 2003, Must Be Reevaluated On Remand**.

As noted earlier, pursuant to a subsequent SSI application, Plaintiff was found disabled as of February 24, 2003.  (A.R. 28.)  The Appeals Council affirmed this finding when reviewing the ALJ's untimeliness decision in connection with the instant, earlier SSI application.  (A.R. 41.)  The Appeals Council observed that "[e]vidence provided by [Plaintiff] supporting the claim he filed on February 24, 2003 included records from the consultative examinations conducted by Dr. Siciarz on June 13, 2003 and by Dr. Bagner on June 23, 2003 . . . [which] provided a basis for the state agency's favorable determination of September 23, 2003."[4]  (A.R. 42.)  The ALJ thereafter opined that the

_____

[4]    In a Physical Residual Functional Capacity Assessment signed by the state agency physician on September 22, 2003, the physician assessed exertional limitations consistent with "light" work, apparently based on the June 13, 2003 opinion of Dr. Siciarz.  (A.R. 405-12.)

On September 23, 2003, the Disability Determination Services ("DDS") examiner found Plaintiff to be disabled, with sedentary

6

"DDS found [Plaintiff] disabled as of February 23, 2003 based on a reduced sedentary exertion framework, using medical-vocational rule 201.10" and based on the above-noted June 2003 reports by Drs. Siciarz and Bagner.[5]  (A.R. 13-14.)

     The June 13, 2003 report by Kristof Siciarz, M.D., which was cited by the Appeals Council and the ALJ, documents Dr. Siciarz's consultative examination of Plaintiff.[6]  (A.R. 163.)    Dr. Siciarz noted that

exertional limitations and a mental limitation of "[s]imple tasks with reduced time pressured setting," stating:

> A medical vocational allowance is recommended in this case because the claimant's physical impairments would pose significant limitations in his ability to perform basic work related functions as well as to meet the minimum standards of a normal competitive work setting on a sustained basis.

(A.R. 127-33.)

     The Commissioner's initial determination of the 2003 SSI claim simply noted the existence of the above September 22 and 23, 2003 assessments, as well as an earlier mental assessment, checked the box for "Disability began" and indicated "2/24/03," and checked the "Rationale" box for "See attached," although nothing is attached to the determination.  (A.R. 28.)

     [5]    Rule 201.10 directs that a person who is "closely approaching advanced age," has a "limited" education, and is skilled or semi-skilled, is disabled.  20 C.F.R. Pt. 200, App. 2.

     [6]    Dr. Siciarz noted in his "impression" (diagnosis) of Plaintiff that:

> [Plaintiff] is a 54-year-old male who has chronic pain in the legs, consistent with claudication.  He apparently has had x-rays demonstrating calcification in the lower extremities.  However, *there were no medical records available for review concerning this*.  He was diagnosed with hepatitis C, which apparently is not active.  He had a biopsy in 1992.  He has a history of myocardial infarction in 1985 and was hospitalized, but he has not required any other cardiac admissions.  He is diabetic and hypertensive.  His blood pressure today was 128/90, indicating good control.  He complains of back pain, which probably represents arthritis.  On examination, he had limited range of motion of the back.

7

Plaintiff's limitations arose from his obesity, back pain, and history of claudication, and found that Plaintiff could perform work at the "light" level and could stand and walk two hours in an eight-hour day. (A.R. 166-67.)  Dr. Siciarz previously examined Plaintiff on December 7, 2000 (A.R. 148), and found that Plaintiff was limited due to his hypertension and diabetes and could perform work at the "medium" level (A.R. 151).[7]

The June 23, 2003 report by psychiatrist Ernest Bagner III, M.D., which was cited by the Appeals Council and the ALJ, documents Dr. Bagner's consultative examination of Plaintiff at the request of the Commissioner.  Dr. Bagner diagnosed Plaintiff with depressive disorder, not otherwise specified and a history of alcohol dependency, and assessed Plaintiff with a global assessment of functioning ("GAF") of 65.[8]  (A.R. 170.)   In describing Plaintiff's limitations, Dr. Bagner stated that Plaintiff: "has difficulty with concentration and memory"; "needs help with daily activities"; "would have mild limitations interacting with supervisors, peers and the public [and] maintaining concentration and attention, and completing simple tasks"; "would have mild to moderate limitations completing complex tasks and completing a

_____

(A.R. 166; emphasis added.)

[7]     "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

[8]     A GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) [or] some difficulty in social occupation, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  Diagnostic and Statistical Manual of Mental Disorders Text Revision("DSM"), 34 (4th ed. 2000).

8

1   normal workweek without interruption"; and "would have moderate
2   limitations handling normal stresses at work." (A.R. 171.)

3

4       Plaintiff contends that the February 24, 2003 onset date
5   established for his disability is an "artificial" date, which is tied
6   only to the filing date of his second SSI application and lacks support
7   in the medical evidence.  Plaintiff argues that the ALJ failed to meet
8   his duty, under Social Security Ruling 83-20, to determine the onset of
9   disability consistently with the medical evidence, and the ALJ should
10  have adduced testimony from a medical expert regarding the onset date
11  for Plaintiff's disability. (Joint Stip at 5.)

12

13      The Commissioner determined that Plaintiff had a disability onset
14  date of February 24, 2003, but did not explain the basis for assessing
15  that specific onset date.  As set forth in Note 4, *supra*, the initial
16  determination consists of a one-page, pro-forma transmittal form with a
17  few checked boxes and incomplete information. (A.R. 28.)  Plaintiff's
18  argument -- that February 24, 2003 is an "artificial" date that is not
19  truly indicative of the onset of his disability, as it does not
20  correspond to any medical evidence indicating a worsening of his
21  condition and only corresponds with his subsequent application date --
22  is well-founded.

23

24      Defendant's assertion that the DDS examiner's finding of disability
25  was based on "contemporaneous" medical evidence -- namely, the June 2003
26  examinations by Drs. Siciarz and Bagner -- begs the question of why
27  February 24, 2003, which predated this "contemporaneous" evidence by
28  several months, was deemed to be the proper onset date of Plaintiff's

9

disability.  The ALJ was tasked by the Appeals Council with determining whether Plaintiff was disabled prior to that artificial onset date.  The record does not contain any medical records indicating, on their face, the date of Plaintiff's onset of disability.  Critically, the Appeals Council cites Dr. Siciarz's June 13, 2003 report as supporting a finding that Plaintiff is disabled as of February 24, 2003, yet the ALJ relied on this *same* report to establish that Plaintiff was not disabled prior to February 24, 2003.  (A.R. 14, 42.)  It is not clear why this medical evidence shows disability existing on one day yet not on the day before.  Indeed, Dr. Siciarz's June 2003 report renders no opinion probative of *when* Plaintiff became disabled, and as noted earlier, this same doctor found Plaintiff capable of medium work two and a half years earlier.  The inconsistent conclusions by the Commissioner regarding the import of June 2003 Siciarz report underscore the record's ambiguity on the onset of disability question.

        The Court concludes that the basis upon which Plaintiff was found disabled as of February 24, 2003, is ambiguous.  Clarification and development of the record is necessary to determine the precise date of the onset of Plaintiff's disability.  *See* Soc. Sec. R. 83-20 (requiring that "the onset date be correctly established and supported by the evidence"); Armstrong v. Comm'r. of Soc. Sec. Admin., 160 F.3d 587, 590-91 (9th Cir. 1998)(remanding pursuant to Social Security Ruling 83-20 to obtain testimony from a medical expert to determine when the claimant became disabled, because the record did not indicate that date sufficiently; and quoting DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir. 1991)("[If the] medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires

1   the administrative law judge to call upon the services of a medical

2   advisor and to obtain all evidence which is available to make the

3   determination.").

4

5       Accordingly, the ALJ's finding as to the onset of Plaintiff's

6   disability constitutes reversible error.

7

8   **B.   Further Vocational Expert Testimony Will Be Required On Remand.**

9

10      As quoted earlier, the ALJ found that Plaintiff has various mental

11  limitations, namely, he:  can perform simple work-related tasks in a

12  work setting where time pressure is reduced; has mild limitations

13  relating to interaction with supervisors, peers, and the public, as well

14  as maintaining concentration and attention and completing simple tasks;

15  has mild-to-moderate limitations relating to the completion of complex

16  tasks and a normal workweek without interruption; and has moderate

17  limitations relating to the handling of normal stresses at work.  (A.R.

18  15, 17.)  The ALJ stated that he had determined these mental limitations

19  after giving "weight" to Dr. Bagner's June 2003 report and the Mental

20  Residual Functional Capacity Assessment completed by a DDS state agency

21  physician on August 12, 2003.  (A.R. 17, 168-71, 186-91.)

22

23      The law requires that an ALJ must seek the testimony of a

24  vocational expert if the claimant has non-exertional limitations.  *See*

25  Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998)(because the

26  claimant had non-exertional limitations, it was error not to seek the

27  testimony of a vocational expert).  A vocational expert's testimony has

28  no evidentiary value if it is not based on a claimant's complete set of

1   limitations. *See* <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-24 (9th Cir. 1988)

2   (in posing a hypothetical to a vocational expert, the ALJ must fully and

3   accurately reflect all of the claimant's limitations).

4

5   Plaintiff's remaining issues relate to the ALJ's reliance on the

6   testimony of the vocational expert ("VE") with respect to the effect of

7   Plaintiff's mental limitations. Plaintiff notes that the VE's testimony

8   about the availability of an alternate occupation (chauffeur) was

9   qualified depending on what the ALJ meant by the term "moderate."

10  Plaintiff argues that, because the VE testified that the alternate

11  occupation would be precluded based on a limitation that fell within the

12  upper range of "moderate" (A.R. 431-32), the VE's testimony does not

13  support the ALJ's finding that Plaintiff can perform the alternate

14  occupation notwithstanding his "moderate" mental limitation. (Joint

15  Stip. at 10-12.) Plaintiff further contends that the hypothetical

16  question was incomplete in that the ALJ failed to include a "moderate"

17  limitation in concentration, persistence, or pace allegedly found by the

18  ALJ. (A.R. 22.) Additionally, Plaintiff contends that the ALJ should

19  have found further "moderate" mental limitations, as determined by a

20  state agency physician, and, presumably, should have included them

21  within the hypotheticals to the VE. (Joint Stip. at 15-18.)

22

23  Plaintiff's complaint that the ALJ failed to include a "moderate"

24  mental limitation he found with respect to concentration, persistence or

25  pace in the hypothetical propounded to the VE is not persuasive. The

26  ALJ did not make such a finding. Rather, the ALJ found that Plaintiff

27  has a "mild" limitation in concentration, attention, and completing

28  simple tasks, and a "mild-to-moderate" limitation in completing complex

tasks and a normal workweek without interruption. (A.R. 15.) In his third hypothetical, the ALJ stated that the individual would have a moderate limitation in understanding, remembering, and carrying out detailed instructions and in his ability to complete a normal workweek without interruption. (A.R. 431.) In his fourth hypothetical, the ALJ stated that the individual would have a "very mild" limitation in concentration, attention, and completing simple tasks, and "mild and a moderate" limitation in his ability to complete complex tasks and a normal workweek without interruption. (RT 432.) These hypotheticals accurately captured the ALJ's actual mental limitations findings.

With respect to the ALJ's failure to adopt the state agency physician's finding that Plaintiff is moderately limited in his ability to complete a normal workday and workweek without interruptions caused by psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (A.R. 187), the ALJ did not err in rejecting the state agency's "moderate" limitations in favor of Dr. Bagner's opinion regarding Plaintiff's mild to moderate limitations in these same respects, which the ALJ provided in his hypothetical question. *See* Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004)(when there are conflicting medical opinions, the ALJ must resolve the conflict); *see also* Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ was not required to, and indeed could not, favor the opinion of the non-examining state agency physician over the opinion of Dr. Bagner, an examining physician. *See, e.g.,* Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

13

1    Plaintiff's remaining contention, however, has merit.  The colloquy

2    between the ALJ and the VE evinces some ambiguity in the VE's testimony

3    with respect to Plaintiff's ability to perform the alternate work of

4    chauffeur, given his "moderate" limitation in his ability to handle the

5    normal stresses of a workplace.  Under the ALJ's broad definition of

6    "moderate," *to wit*, as "somewhere between no significant limitations and

7    marked limitation," the VE's testimony left room for the possibility

8    that Plaintiff *cannot* perform that alternate occupation.[9]  Accordingly,

9    in view of this ambiguity, the Court cannot say that the ALJ's reliance

10   on the VE's testimony constitutes substantial evidence.  On remand, the

11   ALJ should define "moderate" more precisely in setting forth the extent

12   of Plaintiff's mental limitations in his hypothetical question to the

13   VE.

---

[9]    In setting forth his hypothetical questions regarding
"moderate" limitations, the ALJ explained:

> Due to a mental impairment this individual would have moderate
> limitations with respect to the following three areas, *and I
> would define this as being somewhere between no significant
> limitation and marked limitation*.  And I'd define those as
> being -- no significant limitation would be very mild.  And
> markedly would mean that there would be such a severe
> impairment that there would be at best a very poor ability to
> perform.  We're dealing with something in the middle of these
> two extremes.  And these moderate limitations would affect [a]
> person's ability to understand, remember, and carry out
> detailed instructions.  And secondly, the ability to complete
> a normal work week or workday without interruption from
> psychologically-based activities or symptoms.

(A.R. 430-31; emphasis added.)  The VE responded that the person would
be able to perform the work of chauffeur if the limitation leaned
"toward mild."  (RT 431.)

    The ALJ then asked the vocational expert whether a claimant
who had a "moderate limitation handling normal stresses at work" could
perform the job of chauffeur.  (A.R. 432.)  The VE responded that the
job would be precluded if the limitation leaned towards marked, as
opposed to leaning towards mild.  (*Id.*)

**C.      Remand Is Required.**

     Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors. *See* <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

CONCLUSION

     Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

     IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

     **LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 26, 2007

                                        /s/
                                  MARGARET A. NAGLE
                              UNITED STATES MAGISTRATE JUDGE